MARTHA HENDERSON *v.* MRS. ANNIE MAE HARRIS,
MRS. JOHNNIE DUDLEY AND SCOTT NOBLE

5-5690                                    474 S.W. 2d 892

Opinion delivered January 10, 1972

*Judith Rogers,* for appellant.

*Givens, Capps & Reeves;* By: *Paul Capps,* for appellees.

JOHN A. FOGLEMAN, Justice. This appeal comes from a decree directing the sale for partition of a dwelling house and lot in North Little Rock. The chancery court determined that appellant Martha Henderson and appellees Annie Mae Harris, Johnnie Dudley and Scott Noble owned an undivided one-fourth interest each in the property, as devisees under will of their aunt, Sinia Himes. The chancellor specifically held that the title to the property was not held by the testatrix in a resulting trust in favor of appellant, as she had asserted in her answer to the partition suit brought by the appellees, her brother and sisters. Appellant concedes that she had the burden of showing the existence of the trust by clear, satisfactory and convincing evidence. We cannot say that the chancellor's finding that she failed to meet this burden was error.

The father of the parties died when appellant, the youngest of his children, was about two years old. Although their mother survived, several of these children were turned over to sisters of their father soon after his death. While the means and reasons are disputed, appellant was taken by Louise Bass, the father's sister, to her home at Eudora and kept there for a time. Louise Bass was then teaching school, so during a term of school she turned appellant over to another paternal aunt, Sinia Himes, who lived at Readland, after which appellant was returned to Louise Bass and was raised by her. Later Louise Bass moved to North Little Rock. Martha Henderson stayed with this aunt, at least off and on, until she was about 17 years of age. There seems to be some uncertainty about the places these two lived, either separately or together. According to Scott Noble, they lived at 600 North Hazel Street when they first came to North Little Rock, and he visited them there when he was a small boy. There was a time when one or both of them lived near Earle, probably with a paternal uncle of the parties, named Pete (or Pink) Noble. Appellant said that they moved to various places, one of which was Pine Bluff, where she claimed to have been employed at washing dishes in a restaurant at the age of seven. She also said that she had lived in Memphis in a home for orphans in 1926 and 1927 until Louise Bass "stole me back" at the age of nine. Somehow and somewhere she got through the sixth or seventh grade in school. Louise Bass was married and lived with her husband during at least some of this time, but the record abstracted does not show what became of him.

The property was purchased June 27, 1940. It was conveyed to Louise Bass by an Arkansas Bank Commissioner's Deed for a consideration of $1,000. The deed recited deferred purchase money amounting to $890, which was to be paid in monthly installments of $10 beginning August 1, 1940. The lien for this balance was satisfied of record on October 1, 1947. It is admitted by appellant that she did not sign any obligation for the purchase money and that all papers concerning the purchase were signed by Louise Bass. It is also admitted that appellant never received a receipt for any payment

concerning the property from anyone. There is no documentary evidence whatever as to payment of the purchase price or the source of the funds used in making payments. It is admitted that the final payments were made by Mose Himes, but appellant claimed that she had given him the money to do so.

Louise Bass was living on the property involved when she died intestate in 1944. Sinia Himes sold property she owned in Readland when she moved into the Louise Bass home in North Little Rock. Sinia Himes was the sole heir at law of Louise Bass.

Sinia Himes died in June of 1967. Her will dated March 27, 1963, was admitted to probate upon a petition signed by all the parties to this proceeding. Administration on this estate was closed on April 11, 1968, more than one year before this suit was filed. The attorney who offered the will for probate was Clifford McCloy.

Martha Henderson relies largely upon her own testimony, in effect as follows:

Louise Bass' last employment was as a school teacher in 1925. Appellant was earning $7 or $8 per week farming and took care of this aunt from the time the latter became ill in 1937 until her death. Appellant borrowed $300 for her aunt to pay on this house in 1940. She moved Louise Bass there about that time, but continued to work on a farm at Shell Lake until sometime in 1943, when she moved to the house in North Little Rock after having repaid the $300 loan. Appellant and her aunt did not live on the property when it was first purchased, so they turned it over to one Willie Goss to look after. Appellant was earning $40 to $50 per week when she moved into the house. Rebecca Pfeifer also moved in the house in 1943, and was joined there by her sister Hester (or Esther). Louise Bass had no resources and no income from any source after 1937 except for appellant's contributions. No one else was living in the house when Louise Bass died, and

Sinia Himes was still in Readland. Appellant lived in the house alone for a time. Appellee Johnnie Dudley moved in with her about the middle of 1945, and stayed for about a year, after appellant located her and sent her some money. Appellant then went to Readland and brought her Aunt Sinia and Uncle Mose back to the house with her. Johnnie Dudley left when Mose Himes "throwed her out" because she paid nothing for living expenses. He also caused Rebecca Pfeifer and her sister to move for the same reason. Aunt Sinia was not employed, and although Uncle Mose was employed for a short while, appellant paid all the household expenses and also saved some money. In 1950 appellant left and went to California. She then sent her Aunt Sinia $100 per month for 17 years. Her aunt and uncle continued to live on the property. She left the Himeses there because she wanted them there. One of her sisters, Annie Mae Harris, while visiting in the home, had attempted to steal the deed to the property, but returned it when Mose Himes talked about having her arrested.

Even if this testimony were sufficient to show a resulting trust, there are many contradictions, discrepancies and unexplained matters, which would justify a trier of the facts in concluding that it lacked the clarity and convincingness required to engraft a trust upon a solemn conveyance made 30 years ago. Her claim of having provided the sole support for herself and this aunt on $7 or $8 per week, even in 1937, strains credulity. Appellant's testimony that until the death of Sinia Himes she believed the title to be in her own name is not completely consistent with her testimony that she borrowed money for Louise Bass to pay on the purchase price and her admission that all papers relating to the transaction were signed by Louise Bass. Rebecca Pfeifer, who stated that she had lived in the house with Louise Bass and cared for her for seven years before the latter's death, testified that during this time appellant only visited in the home, and contradicted appellant's claim that appellant had lived in the house with her aunt for a period beginning in 1943. Alberta Sizemore, a neighbor

who said that she cared for Sinia Himes for four months before the latter's death, testified about reading all the elderly woman's mail to her. This witness stated that, while appellant once sent some clothing to her aunt, and $25 on one occasion and $10 on another, she never sent $100.

Apparently, no real effort was made to controvert damaging testimony by appellee Scott Noble relating to the interest appellant took in the property both before and after she went to California. This brother testified that he spent money on the house because of its run-down condition beginning in 1945 or 1946 after he got out of the army. He said he was sending the money to Sinia Himes after 1945, but he brought the money in the 1960's. He presented receipts for $695 for a new roof on June 1, 1965, and $3,900 for payments and construction in 1965 to prevent condemnation. He said he spent some unspecified amount for new water piping in 1964 or 1966. He asserted that appellant did not furnish any money for these purposes and that he did not hear from her until two days after their Aunt Sinia died. It seems that if Martha Henderson owned the property, furnished all the money to pay for it and knew of no claim that the record owner's sister had to it, she should have been more concerned with its condition than the evidence shows her to have been.

There is a strange inconsistency in appellant's attitude toward Louise Bass. In one breath, she seems to explain her purported actions by calling Mrs. Bass her mother, as well as her aunt. In another she expresses resentment toward this aunt, who, she says, stole her and took devious means to hide her from her own mother.

Appellant's conduct after the death of the testatrix is also inconsistent with her present position. Her testimony that she asserted a claim to the property in her own right is corroborated by one of the appellees, who said that appellant claimed that the property was her own in spite of what the will said. Yet, this supposed owner signed the petition for probate of the will, signed a waiver of notice of further proceedings, went back to

California and stayed and did nothing until administration was closed and this partition suit filed. It is true that she claims that her brother and sisters only let her read parts of the will and that before she left she placed her claim in the hands of an attorney, Judge Robinson, who, she says, obtained the services of Mr. McCloy, and that a real estate agent was looking after the property while the will was being probated. The appellee who heard appellant claim the property in spite of the will said that Judge Robinson was recommended to the devisees to bring the will to probate, but that he in turn recommended Clifford McCloy, who was then employed. It hardly seems likely that the attorney would close the administration of an estate with full knowledge that an outstanding claim to the property by one of the devisees had been entrusted to him for handling, without some notice to that claimant, regardless of formal waiver.

Corroboration of appellant's testimony as to funds furnished by her at the time of, or subsequent to the purchase, is almost totally lacking. Only Rebecca Pfeifer corroborates her testimony that Louise Bass had no source of funds during the years she lived in the house, but this witness could not tell of any occasion when appellant gave her aunt any money. Even though this witness did say on redirect examination that she knew Martha Henderson was the only one bringing money to the house, it seems that she was referring to a time after the death of Louise Bass, because she again denied knowledge of any source of the older woman's money during her lifetime.

Since the evidence is not such as to support appellant's plea for reversal, we affirm the decree of the chancery court.